**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

PATRICIA STRINGER, ET AL.                    CIVIL ACTION NO. 25-1458

VERSUS                                       JUDGE S. MAURICE HICKS, JR.

VILLAGE OF GRAND CANE,                       MAGISTRATE JUDGE HORNSBY
ET AL.

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) or, Alternatively, 12(b)(6) (Record Document 11). The Motion is fully briefed and ripe for review. See Record Documents 20 & 24. For the reasons explained below, the Motion is **GRANTED**. All claims are **DISMISSED WITH PREJUDICE** except the claim for breach of the duty of good faith under Louisiana contract law is **DISMISSED WITHOUT PREJUDICE.**

**FACTUAL BACKGROUND**

The following facts are drawn from the Complaint and accepted as true for purposes of this Motion. See Record Document 1.

Plaintiff Patricia Stringer ("Stringer") is the owner and operator of Homemade Quilts & More, Inc. (the "Quilt Shop"), a Louisiana corporation. See id. at 2. In 2020, the Quilt Shop entered into a written lease with Defendant Village of Grand Cane (the "Village") for the use of Village-owned property located within the Village's historic district. See id. at 4. The lease was executed between the Village and the Quilt Shop. See id.

According to the Complaint, Stringer operated the Quilt Shop at the leased premises for several years. See id. In 2024, disputes arose between Stringer and Village officials concerning a community event organized by the Historic Grand Cane Association

("HGCA"). See id. at 5. Stringer voiced criticism of the event at a public meeting of the Village's Board of Aldermen. See id. Thereafter, the Quilt Shop displayed a sign in its storefront window calling for a boycott of the HGCA event and accusing the HGCA and Village officials of unfair business practices. See id.

The Complaint alleges that Village officials expressed dissatisfaction with Stringer's conduct and statements during subsequent public meetings. See id. at 6. On October 24, 2024, the Board of Aldermen voted to grant the Quilt Shop a three-month extension of its lease contingent "upon [Stringer] making a public apology to the HGCA, the Mayor and Board of Aldermen and the Village." Id. at 8. Thereafter, Stringer replaced the boycott sign in the Quilt Shop with a sign stating that she apologized for her previous sign and encouraging people to visit the HGCA market. See id. At a meeting on January 13, 2025, the Board of Aldermen voted not to renew the Quilt Shop's lease because Stringer had not met the condition of adequately apologizing for the boycott sign. See id. at 9.

Based on these events, Stringer and the Quilt Shop have filed suit against the Village, Mayor Marsha Richardson ("Mayor Richardson"), Clayton Davis ("Davis"), K.E. Campbell ("Campbell"), and Rhonda Meek ("Meek") (collectively, "Defendants"). As to Stringer's individual claims, she alleges causes of action for First Amendment retaliation under 42 U.S.C. § 1983, violation of Article I, Section 7 of the Louisiana Constitution, abuse of rights under Louisiana law, intentional infliction of emotional distress ("IIED") under Louisiana law, breach of the duty of good faith under Louisiana contract law, Monell liability against the Village, civil conspiracy under Louisiana law, and conspiracy to violate her First Amendment rights under § 1983. See Record Document 1 at 10–20.

In response, Defendants filed the present Motion arguing that Stringer lacks standing to assert claims individually (Record Document 11). However, the Court notes that in addition to the instant Motion, the individual Defendants have each filed separate motions to dismiss raising defenses including qualified immunity and failure to state a claim under Rule 12(b)(6). See Record Documents 12, 14, 15, 16. Those motions challenge the sufficiency of the pleadings and the availability of relief on the merits.

Because Stringer asserts claims in her individual capacity while the Quilt Shop asserts claims as a separate juridical entity, the Court must first address whether Stringer has Article III standing to pursue her claims. Then, the Court will consider the remaining claims asserted by the Quilt Shop and the additional grounds for dismissal raised by Defendants in their respective motions.

## LAW AND ANALYSIS

### I.    Summary of the Arguments

Defendants argue that Stringer lacks Article III standing because she was not a party to the lease at issue. See Record Document 11-1 at 5–6. Defendants emphasize that the only government action alleged to have caused injury is the Village's decision not to renew the lease, a contract held exclusively by the Quilt Shop. See id. Because any economic or property injury resulting from the nonrenewal was suffered by the corporation, Defendants contend that Stringer may not assert claims in her individual capacity based on that injury. See id. Defendants further argue that Fifth Circuit precedent forecloses attempts by shareholders, officers, or owners to assert personal constitutional claims for injuries suffered by a corporation. See id.

In opposition, Plaintiffs argue that Stringer has standing because she personally engaged in the protected speech and was the direct target of Defendants' alleged retaliatory animus. See Record Document 20 at 2. Plaintiffs assert that the harm alleged is not merely economic, but includes personal reputational injury, emotional distress, and the chilling of Stringer's First Amendment rights. See id. at 2–3. Plaintiffs also contend that Stringer signed the lease in her personal capacity as an additional lessee and that the lease's use of female personal pronouns confirms the parties' intent for Stringer to be a lessee. See id. at 2. Lastly, Plaintiffs argue that, even if standing is lacking as to other claims, the IIED claim belongs to Stringer alone, and she independently satisfies the standing requirements for that claim. See id. at 3.

In reply, Defendants argue that the lease unambiguously defines the Quilt Shop as the sole lessee. See Record Document 24 at 2. Defendants further contend that Stringer's dual signature on the lease reflects, at most, a personal guaranty and does not render her a principal obligor. See id. at 4. Defendants assert that Stringer cannot satisfy the injury-in-fact requirement under Lujan v. Defenders of Wildlife because all alleged harms flow directly from the Village's decision not to renew the lease and therefore constitute corporate injuries, not injuries personal to Stringer. See id. at 6; see also Lujan, 504 U.S. 555 (1992).

## II.    Standing Analysis

Motions filed pursuant to Rule 12(b)(1) challenge the subject matter jurisdiction of the court to hear a case. See F.R.C.P. 12(b)(1). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint

4

supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming

v. U.S., 281 F.3d 158, 161 (5th Cir.2001). For a Rule 12(b)(1) motion, the party asserting

jurisdiction is the one that bears the burden of proof that jurisdiction exists. See City of

Alexandria v. Fed. Emerg. Mgt. Agency, 781 F. Supp. 2d 340, 346 (W.D. La. 2011). Thus,

Stringer bears the burden of proving jurisdiction in this matter.

To satisfy the jurisdictional standing requirements under Article III, the plaintiff must

have suffered an injury in fact, which is "an invasion of a legally protected interest which

is (a) concrete and particularized; and (b) 'actual or imminent, not "conjectural" or

"hypothetical."'" Lujan, 504 U.S. at 560 (internal citations omitted). Second, there must be

a causal connection between the injury and the conduct complained about. See id. In

other words, the injury must be fairly traceable to the conduct. See id. Third, it must be

likely that the injury can be "redressed by a favorable decision." Id. at 561 (citations

omitted).

Here, the injuries alleged in support of each of Stringer's claims arise from a single

governmental action: the Village's decision not to renew a lease for Village-owned

property. That lease was held exclusively by the Quilt Shop, not by Stringer individually.

The Complaint does not allege that Stringer herself was a party to the lease. See Record

Document 1. To the contrary, the face of the lease reflects that the Quilt Shop was

intended to be the sole lessee as a juridical entity separate and distinct from Stringer. See

Record Document 11-2.[1] Throughout the lease, the lessee is consistently identified as

---

[1] The Court notes that it can consider the lease as attached to the Motion to Dismiss because Defendants' standing challenge constitutes a factual attack on the Court's subject matter jurisdiction. Accordingly, the Court is not confined to the allegations of the Complaint and may consider evidence outside the pleadings, including documents relevant to jurisdictional facts. See Williamson v. Tucker, 645 F.2d 404, 412–13 (5th Cir. 1981). The lease attached to Defendants' motion is central to the jurisdictional inquiry and its authenticity is not disputed. The Court therefore considers the lease for the limited purpose of determining whether Stringer possessed a legally protected interest sufficient to confer Article III standing.

the Quilt Shop, not Stringer individually, and the lease imposes its principal obligations exclusively upon the corporate entity. See id.

Although Stringer signed the lease in both her representative and individual capacities, that fact alone is insufficient to impose personal liability. Under Louisiana law, a corporate representative who signs a contract on behalf of a disclosed principal does not automatically assume personal obligations. At most, Stringer would be a surety for the lease but even that would require a clear and express promise by Stringer to pay the debt of the Quilt Shop. See La. Civ. Code art. 3038. Nothing in the lease evidences the requisite intent to bind Stringer as a co-lessee or principal obligor. Because the language of the contract clearly and unambiguously binds the Quilt Shop as the sole lessee, the Court may not inquire further into the intent of the parties. See id. art. 2046.

Considering the Quilt Shop, not Stringer, was the entity performing under the lease and entitled to its benefits, any injury caused by the nonrenewal of the lease was suffered by the corporation. Any economic loss, reputational harm, emotional distress, or humiliation alleged by Stringer is merely a consequence of that corporate injury and is therefore derivative. See Duran v. City of Corpus Christi, 240 Fed. Appx. 639, 641 (5th Cir. 2007); see also Galindo v. City of Del Rio, 2021 WL 2763033, at *4–5 (W.D. Tex. Mar. 26, 2021). The Fifth Circuit has specifically stated that "corporate shareholders, officers, and employees cannot pursue personal claims that are based on alleged misconduct towards the corporation unless they are able to show some 'direct' harm to themselves." Duran, 240 Fed. Appx. at 641–42. Applying that principle, the court in Galindo held that allegations of emotional injury, reputational harm, and First Amendment retaliation were insufficient to establish direct, personal harm where those injuries flowed

6

from governmental action taken against the business entity. See 2021 WL 2763033, at *4.

The Court notes that the fact that Stringer's protected speech allegedly precipitated the Village's decision is irrelevant to the standing inquiry. Standing "turns on the plaintiff's injury, not the defendant's motive …." Duran, 240 Fed. Appx. at 642. The Court does not overlook Stringer's allegations that Village officials personally criticized her at public meetings or conditioned renewal of the lease on her issuing a public apology. Accepting those allegations as true, the dispositive inquiry remains whether Stringer herself suffered an invasion of a legally protected interest.

Here, the only consequence alleged to have resulted from Defendants' conduct was the nonrenewal of a lease held exclusively by the Quilt Shop. The Complaint does not allege that Stringer was fined, prohibited from speaking, excluded from public meetings, or otherwise sanctioned in her individual capacity. Where the alleged retaliation is carried out solely through action taken against a corporate contract, any resulting injury remains derivative of the corporation's injury, even if the governmental conduct was directed at the corporation's owner. See Galindo, 2021 WL 2763033, at *5; see also Liberty Sackets Harbor LLC v. Village of Sackets Harbor, 776 Fed. Appx. 1, 3 (2d Cir. 2019) (LLC member has no standing for emotional distress claim where harm was directed at LLC); see also Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 736 (2d Cir. 1987) (even a sole shareholder lacks standing to assert claims where corporation was wronged).

The Court notes that even if Stringer had met the requirements for Article III jurisdiction, the prudential limitations on standing would require the Court to grant the

7

Motion to Dismiss. The standing doctrine has its origins in both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. See O'Hair v. White, 675 F.2d 680, 685 (5th Cir. 1982). Even where the constitutional requirements are met, federal courts are further constrained by prudential limitations on justiciability. One such limitation is the principle that "a plaintiff generally may not rest his claim to relief on the legal rights of third parties even if he has alleged injury sufficient to satisfy article III." O'Hair, 675 F.2d at 687. As the Fifth Circuit has explained, this prudential limitation precludes an individual from asserting claims that belong to a separate legal entity, including a corporation, where the alleged injury is derivative of the harm to that entity. See id.; see also Ensley v. Cody Res., Inc., 171 F.3d 315, 320–21 (5th Cir. 1999); see also Lewis v. Knutson, 699 F.2d 230, 237–238 (5th Cir. 1983). Because all of Stringer's claims arise from the nonrenewal of the lease, both the constitutional and prudential limitations on standing prevent Stringer from being a proper plaintiff.

Stringer has not alleged an injury independent of the harm allegedly suffered by the Quilt Shop; thus, she lacks Article III standing to pursue any of the claims asserted in her individual capacity. Accordingly, the Motion to Dismiss (Record Document 11) is **GRANTED** to the extent that it moves to dismiss the claims asserted by Stringer in her individual capacity.

### III.    Remaining Claims Asserted by the Quilt Shop

Having determined that Stringer lacks Article III standing to pursue any claims in her individual capacity, the Court now proceeds with the Quilt Shop as the sole remaining plaintiff in this action. The Complaint asserts eight causes of action in total. See Record Document 1 at 10–20. Of those eight claims, six are pleaded as asserting personal harms

to Stringer, including alleged retaliation for her speech, emotional distress, reputational harm, and personal mistreatment by Village officials. See id. Specifically, Counts One (First Amendment retaliation), Two (Article I, Section 7 of the Louisiana Constitution), Three (abuse of rights), Four (intentional infliction of emotional distress), Six (civil conspiracy), and Seven (conspiracy to violate the First Amendment) are all premised on injuries allegedly suffered by Stringer personally. Those claims cannot be read as asserted on behalf of the Quilt Shop, as the Complaint does not allege that the Quilt Shop itself engaged in protected speech, suffered emotional distress, or experienced personal humiliation or reputational harm.

Importantly, the Court's dismissal of Stringer's claims does not rest on the absence of alleged personal harm. Rather, it rests on the distinction between an injury alleged and the invasion of a legally protected interest for purposes of Article III standing. Although the Complaint alleges personal consequences to Stringer, the only legally operative governmental action alleged is the Village's decision not to renew a lease held exclusively by the Quilt Shop. Where the alleged personal harms flow solely from injury to a corporate contract, those harms are derivative and do not confer standing on the individual. Accordingly, with Stringer dismissed as a plaintiff, Counts One, Two, Three, Four, Six, and Seven do not survive and cannot be recharacterized as claims asserted by the Quilt Shop.

The only claims plausibly asserted by the Quilt Shop are Count Five, asserting municipal liability under § 1983 against the Village, and Count Eight, asserting breach of the duty of good faith under Louisiana contract law against the Village. The Court therefore limits its remaining analysis to those two claims.

a. Rule 12(b)(6) Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To determine whether a complaint is adequate under Rule 8(a)(2), courts now apply the "plausibility" standard established in Bell Atlantic Corp. v. Twombly, and its progeny. See 550 U.S. 544 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." See id. at 555–56. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding on a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos County, 981 F.2d 237, 243 (5th Cir. 1993). However, the Court may consider the complaint, documents attached to it, and documents referenced therein and central to the claims, even if attached to the Motion to Dismiss. See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498–99 (5th Cir. 2000). Courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678. However, courts do not have to accept legal conclusions as fact. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive. See id. at 678–79. If the complaint does

10

not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

    b.  Monell Claim

The Quilt Shop asserts a claim for municipal liability under § 1983 against the Village. Under Monell, a municipality is not liable under Section 1983 on the theory of respondeat superior. See Monell v. Dept. of Soc. Services of City of New York, 436 U.S. 658, 691 (1978). Rather, a municipality may be liable only if its official policy or custom is the "moving force" behind the plaintiff's alleged constitutional right violation. Rivera v. Hous. Indep. Sch. Dist., 349 F.3d 244, 247 (5th Cir. 2003) (citations omitted).

To succeed on a Monell claim against a municipality, a plaintiff must establish three elements: "(1) an official policy or custom; (2) of which a policy maker can be charged with actual or constructive knowledge; and (3) a constitutional violation whose moving force is that policy or custom." Valle v. City of Houston, 613 F.3d 536, 541–42 (5th Cir. 2010) (internal quotations and citations omitted). Official policy is generally found in "duly promulgated policy statements, ordinances or regulations." Id. A policy can also be evidenced by custom. A custom is a "persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." Hinojosa v. Butler, 547 F.3d 285, 296 (5th Cir. 2008).

Here, the Court has determined that no plaintiff with Article III standing has alleged a viable underlying constitutional deprivation. Because Stringer's claims are dismissed for lack of standing, and the Quilt Shop has not independently alleged a constitutional injury cognizable under § 1983, there is no constitutional violation upon which to predicate

municipal liability. Accordingly, the <u>Monell</u> claim asserted in Count Five fails as a matter of law and is **DISMISSED** under Rule 12(b)(6).

    c.  <u>Breach of Duty of Good Faith Claim</u>

Count Eight asserts a state law claim for breach of the duty of good faith under Louisiana contract law. This claim arises solely under state law and is asserted against the Village. The doctrine of supplemental jurisdiction gives federal courts jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Section 1367(c) states that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court had dismissed all claims over which it has original jurisdiction." Although dismissal is discretionary, when all federal claims are dismissed prior to trial, the general rule is that the district court should decline to exercise supplemental jurisdiction over the remaining state law claims. <u>See</u> <u>Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.</u>, 554 F.3d 595, 602 (5th Cir. 2009). Having dismissed all claims over which it had original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claim. Accordingly, Count Eight is **DISMISSED WITHOUT PREJUDICE**.

    IV.   <u>Remaining Motions to Dismiss</u>

Defendants have filed multiple Motions to Dismiss (Record Documents 12, 14, 15, 16) in addition to the Motion to Dismiss analyzed above (Record Document 11). Because the Court has dismissed all claims, the remaining Motions to Dismiss are **DENIED AS MOOT.**

## CONCLUSION

Based on the reasons explained above, Defendants' Motion to Dismiss (Record Document 11) is **GRANTED**. All claims asserted by Stringer in her individual capacity are **DISMISSED WITH PREJUDICE** for lack of Article III standing. With respect to the remaining claims asserted by the Quilt Shop, Count Five (<u>Monell</u> liability) is **DISMISSED WITH PREJUDICE** under Rule 12(b)(6), and Count Eight (breach of the duty of good faith under Louisiana law) is **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. § 1367(c). In light of the Court's rulings herein, the remaining Motions to Dismiss filed by the individual Defendants (Record Documents 12, 14, 15, and 16) are **DENIED AS MOOT**.

A Judgement consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 21st day of January, 2026.

_____
JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT